RICHARD HERZ, ESQ.
rick@earthrights.org
MARCO SIMONS, ESQ.
marco@earthrights.org
BENJAMIN HOFFMAN, ESQ.
benjamin@earthrights.org
MARISSA VAHLSING, ESQ.
marissa@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K Street N.W., Suite 401
Washington, DC 20006
Telephone:  (202) 466-5188
Facsimile:  (202) 466-5189

Attorneys for Applicant Elmer Eduardo Campos-Álvarez

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

*In Re* Application of ELMER EDUARDO CAMPOS-ÁLVAREZ for an Order Granting Leave to Issue Subpoenas for the Taking of Discovery Pursuant to 28 U.S.C. § 1782

---

**APPLICATION OF ELMER EDUARDO CAMPOS-ÁLVAREZ FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

---

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................................1

FACTUAL BACKGROUND ................................................................................................................2

SECTION 1782 ENTITLES THE APPLICANT TO TAKE DISCOVERY
FROM NEWMONT..................................................................................................................................6

    I.    Applicant satisfies the three statutory prerequisites............................................................6

    II.    The discretionary factors favor the grant of discovery ........................................................7

        A.    Respondents are not parties to the Peruvian proceedings .......................................8

        B.    The discovery sought is relevant to and necessary
              for pending foreign proceedings ..............................................................................8

        C.    Peruvian courts would accept federal court assistance
              under Section 1782…………………………………………………………………10

        D.    This application does not conceal an attempt to circumvent
              foreign proof-gathering restrictions ......................................................................10

        E.    The discovery sought is narrowly tailored to the needs of the
              Peruvian proceeding, and is neither burdensome nor intrusive ............................12

    IV. CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

*Brandi-Dohrn v. IKB Deutsche Industriebank Ag*, 673 F.3d 76 (2d Cir. 2012) ........................ 10

*Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) ......................................................... 10

*Chevron Corp. v. E-Tech International*, No. 10cv1146-IEG (WMc),
    2010 U.S. Dist. LEXIS 94396 (S.D. Ca. Sept. 10, 2010) ....................................................... 8

*Chevron Corp. v. Shefftz*, 754 F.Supp. 2d 254 (D. Mass. 2010) ................................................ 10

*Consorcio Minero S.A. v. Doe Run Res. Corp.*,
    2011 U.S. Dist. LEXIS 112414 (E.D. Mo. Sept. 30, 2011) ..................................................... 9

*Cryolife, Inc. v. Tenaxis Med., Inc.,* No. C08-05124 HRL,
    2009 U.S. Dist. LEXIS 3416 (N.D. Cal. Jan. 13, 2009) ................................................ 6, 7, 12

*Fleischmann v. McDonald's Corp.,* 466 F. Supp. 2d 1020 (N.D. Ill. 2006) .............................. 12

*In re* 28 *U.S.C.* § 1782, 249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................ 12

*In re Bayer AG,* 146 F.3d 188 (3d Cir. 1998) .............................................................................. 8

*In re Chevron Corp.* (*Berlinger*), 709 F.Supp.2d 283 (S.D.N.Y. 2010) ..................................... 10

*In re Chevron Corp.* (*Donziger)*, 749 F.Supp.2d 141 (S.D.N.Y. 2010) ..................................... 10

*In re Chevron Corp. (Rourke)*, 753 F.Supp. 2d 536 (D. Md. 2010) ........................................... 11

*In re Chevron Corp. (Uhl, Baron, Rana & Associates)*, 633 F.3d 153 (3d Cir. 2011) ........ 11, 12

*In re Letters Rogatory From the Toyko District, Tokyo,* 539 F.2d 1216 (9th Cir. 1976) ............ 1

*In re Republic of Ecuador (Borja)*, No. C-10-80225 MISC CRB (EMC),
    2010 U.S. Dist. LEXIS 102158 (N.D. Cal. Sept. 15, 2010) .................................................. 10

*In re Republic of Ecuador (Kelsh)*, No. C 11-80171 CRB,
    2011 U.S. Dist. LEXIS 108612 (N.D. Cal. Sept. 23, 2011) .................................................... 5

*In re Republic of Ecuador (Mackay)*, 2:11-mc-00052 GSA,
    2011 U.S. Dist. LEXIS 103360 (E.D. Cal. Sept. 12, 2011) .................................................. 10

*In re Roz Trading Ltd.*, Case No. 1:068 cv-02305-WSD,
    2007 U.S. Dist. LEXIS 2112 (N.D. Ga. Jan. 11, 2007) .................................................... 8, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ....................................passim

*Metallgesellschaft v. Hodapp*, 121 F.3d 77 (2d Cir. 1997) ........................................... 7, 11, 12

*Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT),

iv

2008 U.S. Dist. LEXIS 63802 (N.D.N.Y. Aug. 18, 2008) ........................................................... 10

*United States v. Global Fishing, Inc.*, 634 F.3d 557 (9th Cir. 2011) ............................................. 5

*Weber v. Finker*, 554 F.3d 1379 (11th Cir. 2009) ................................................................. 8, 10

**U.S. Statutes**

28 U.S.C. § 1782(a) ............................................................................................................ passim

Applicant Elmer Eduardo Campos-Álvarez hereby applies to the Court for an order pursuant to 28 U.S.C. § 1782 to obtain discovery from Respondents Newmont Mining Corporation ("NMC"), Newmont Peru SRL ("Newmont Peru") and Newmont USA LTD ("Newmont USA"), (collectively "Newmont" or the "Newmont entities").[1] As Section 1782 permits, Applicant seeks this discovery for use in pending foreign proceedings in which Applicant is identified as an aggrieved party, or a plaintiff.[2]

Applicant respectfully requests oral argument, at the Court's earliest convenience.

Jurisdiction: This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this matter arises under 28 U.S.C. § 1782.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Applicant, Elmer Eduardo Campos-Álvarez, is a 32 year old *campesino* (farmer with ancestral ties to the land) from the Cajamarca region of Peru. Mr. Campos lost a kidney and his spleen and was paralyzed from the waist down on November 29, 2011, when police officers shot him in the back while he was peacefully protesting. The officers were acting under contract with Minera Yanacocha, a joint venture in which Respondent Newmont is a majority shareholder and manager, to provide security at an area concessioned to the company for a gold mining project. A local prosecutor is currently investigating whether the shootings of Mr. Campos and others were crimes. Mr. Campos is identified as an aggrieved party in that investigation, and it was upon his behalf, and on behalf of others, that the criminal complaint was originally filed with the prosecutor. Additionally, Mr. Campos has filed

---

[1] Although the Applicant could proceed with this Application *ex parte, e.g.*, *In re Letters Rogatory From the Toyko District, Tokyo*, 539 F.2d 1216, 1219 (9th Cir. 1976), he has chosen instead to serve this Application on the Respondents.

[2] Section 1782(a) provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. . . . upon the application of any interested person . . ." 28 U.S.C. § 1782(a).

a civil action against a number of government agencies believed to be responsible for his harms arising out of these events. By this 28 U.S.C. § 1782 application, Mr. Campos seeks to obtain discovery, in the form of the production of documents and a Rule 30(b)(6) deposition, in support of the prosecutor's investigation and the pending civil action.

The questions in the prosecutor's investigation and the civil action relate to the legal responsibility of various parties for the violence of November 29, 2011, at the site of the Conga mine concession, including the police officers and their supervisors up the chain of the command, and potentially the mining company and its employees and contractors as well. Applicant herein seeks discovery relevant to those issues: information or documentation – including photographic and video evidence, reports of Yanacocha security or employees, and internal company communications – that shed light on the events of November 29, 2011.

This Application satisfies each of Section 1782's statutory prerequisites. Newmont Respondents "reside" and may be "found" in this District, the discovery is "for use in" a foreign proceeding, and the Applicants are "interested persons" in that proceeding. 28 U.S.C. § 1782. The discretionary factors courts consider also favor granting this Application. Newmont is not a party in the foreign proceeding; the Peruvian courts will be receptive to Section 1782 assistance; this Application does not conceal an attempt to circumvent foreign proof-gathering restrictions and is a good faith effort to obtain probative evidence; and the discovery sought is not unduly intrusive or burdensome.

Accordingly, the Applicant respectfully requests that the Court grant this Section 1782 application as expeditiously as possible.

## FACTUAL BACKGROUND

Newmont Mining Corporation is one of the world's largest gold producers, with mining projects throughout the world. As a majority shareholder in, and manager of, a joint venture, Minera Yanacocha

S.R.L., Newmont is seeking to develop a mine 75 kilometers northeast of the city of Cajamarca in Peru, separate from its existing mine, Yanacocha. The proposed "Conga" mine has generated vocal opposition in the local communities, because it will destroy lakes that local people depend on for water and hold sacred.

Minera Yanacocha contracted with the Peruvian National Police (PNP) for the provision of security services at the Conga site. The responsibilities laid out in private contracts with the PNP are not publicly known. Police have been on the scene of a number of protests against the mine, many of which have resulted in injuries to protestors.

Beginning in October 2011, a group of campesinos set up camp in a largely grassy, hilly area near the Conga concession, as part of a sustained protest against the project. Later in November, a general strike was declared throughout the region in protest of the proposed mine. On the evening of November 28, a small group of the protesters attempted to move their camp into the concession area. After some discussion between protestors and police, who had blockaded the road leading to the mine concession as part of their provision of security services to the company, the police agreed to permit the protesters to camp near, but without passing, the police blockade.

Early the next morning, a confrontation arose when the 30 police officers ordered the protestors back from the new encampment and further away from the concession area. The police fired teargas, warning shots, and pellets to push the protesters back down the road to their original camp. Other protesters from the original camp began approaching the police along the road or on the adjoining hills, and police began firing live ammunition. Applicant Elmer Campos-Álvarez, who was unarmed at the time, was shot in the back and is now paraplegic. Another victim was shot in the leg, and has suffered through a number of operations. A third protester was shot in the mouth with a teargas canister, resulting in a broken jaw and the loss of 14 teeth. In total, an estimated 24 civilians were injured, at least 9 of

them seriously. The police were acting pursuant to a contract with Minera Yanacocha for the provision of security at the site of the Conga concession during the November 29, 2011 events. During this time, the police were in contact and coordination with member(s) of the company's private security provider, SECURITAS, and possibly the company itself.

On December 20, 2011, the Segunda Fiscalía Provincial Penal Corporativa de Celendín (the local prosecutor) opened an investigation against those who may be found responsible for the crimes of abuse of authority and causing minor and severe bodily harm, including to Mr. Campos, who is identified as an aggrieved party in the investigation. Case number 579-2011, Dispoción N 01-2011-2FPPCC. The investigation has been subject to multiple interventions on behalf of the aggrieved parties, including Mr. Campos. Most recently, the office of the senior prosecutor for Cajamarca has ordered the local prosecutor to formalize and continue the investigations against the two commanding police officers to determine whether they were direct co-authors of crimes committed against Elmer Campos and others. Disposición N. 589-2013-MP-TFSP-C (Cajamarca, Dec. 16, 2013).

Additionally, Mr. Campos has presented a civil action for damages against the Peruvian National Police and various state officials. That action was filed on October 1, 2013, before the 20th Civil Court of Lima (20 Juzgado Civil de Lima), and was given case number 26000754-2013. The action is currently pending in the courts.

The Applicant seeks information or documentation, including photographic and video evidence, reports of Yanacocha security or employees, and internal company communications, that will shed light on the events of November 29, 2011. Thus, Applicant seeks information including the names of the officers at the protest on November 29, the number and types of arms assigned to each officer, the inventory of those arms, the amount and type of arms and ammunition used, where the officers involved are currently posted, the nature of Newmont's contractual relationship with the PNP (including, but not

limited to, the amount and type of compensation provided by Newmont to individual police officers), the existence and extent of Newmont's control over the PNP, an accounting of all communications between Newmont personnel and the PNP relevant to the events of November 29, 2011, the operational plan for the events of that day, medical reports arising from treatment provided in the immediate aftermath of the violence, and incident reports regarding the protest. This evidence will assist the Peruvian prosecutor and ultimately the Peruvian courts in determining whether crimes or torts were committed by the police and who is responsible for any such crimes or torts.

There is every reason to believe that Newmont, as manager of Minera Yanacocha and its operations, possesses this critical evidence relevant to the prosecutor's investigation and the civil action. With respect to payments to the police, for example, Newmont is required to make an accounting of such payments under its legal obligations under the Foreign Corrupt Practices Act, 15 U.S.C. § 78m(b)(2). The unusually close relationship between and among the Newmont entities gives the Applicants further reason to believe that (in addition to Minera Yanacocha S.R.L.), NMC, Newmont Peru and Newmont USA have relevant information. Newmont Mining Corp. has a history of close involvement with Yanacocha. Newmont Mining Corporation, Newmont Peru SRL and Newmont USA LTD all share the same Denver address. Newmont is a majority shareholder in the Minera Yanacocha joint venture. Yanacocha is managed by Newmont USA LTD, and a large number of Yanacocha's Management team are also part of Newmont Mining Corp.'s Management team. A number of the individuals who signed the agreement with the Peruvian National Police (PNP) for security services are management personnel for both Yanacocha and Newmont.

## SECTION 1782 ENTITLES APPLICANT TO TAKE DISCOVERY FROM NEWMONT

Congress intended Section 1782 to provide "broad assistance" to foreign tribunals. *United States v. Global Fishing, Inc.*, 634 F.3d 557, 563 (9th Cir. 2011). An applicant's burden under Section 1782 is "minimal." *In re Republic of Ecuador (Kelsh)*, No. C 11-80171 CRB, 2011 U.S. Dist. LEXIS 108612 (N.D. Cal. Sept. 23, 2011). The Applicants easily meet it here; the discovery is exactly the type of assistance to foreign courts that Congress contemplated. The Court should grant the application.

**I.     Applicant satisfies the three statutory prerequisites.**

Discovery pursuant to 28 U.S.C. § 1782 has three statutory prerequisites, each of which Applicant satisfies. "The statute may be invoked where (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *See Cryolife, Inc.* v. *Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 U.S. Dist. LEXIS 3416 at *3 (N.D. Cal. Jan. 13, 2009) (citation omitted).

First, Newmont resides or may be found in this District—it is headquartered in Greenwood Village, Colorado**.** Second, Plaintiffs seek discovery for use in a proceeding before a foreign tribunal, specifically, a criminal case currently under investigation[3] by the office of the Segunda Fiscalía Provincial Penal Corporativa de Celendin and a civil action before the 20th Civil Court in Lima. Third, the Applicant is an "interested person." Mr. Campos was injured by persons working to provide security for Newmont on November 29, 2011, while protesting peacefully outside of the Newmont concession area and continues to suffer from those injuries; the original criminal complaint was presented on his behalf; he is identified as an aggrieved party in the local prosecutor's investigation; at least one

---

[3] The statute specifically provides that "a proceeding in a foreign or international tribunal" includes "criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a).

intervention has been presented by lawyers acting on his behalf in the course of the local prosecutor's investigation; and he is the named plaintiff in a civil action currently pending in Peruvian courts regarding the events of November 29, 2011. All of Section 1782's statutory prerequisites are met.

**II.     The discretionary factors favor the grant of discovery.**

Once the statutory requirements are met, a district court "is free to grant discovery in its discretion." *Metallgesellschaft* v. *Hodapp*, 121 F.3d 77, 78 (2d Cir. 1997). This discretion "must" be exercised in light of the statute's twin aims: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 79; *accord Cryolife, Inc.*, 2009 U.S. Dist. LEXIS 3416 at *4.

The Supreme Court identified four factors that "bear consideration" by district courts in exercising their discretion to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Since these factors are discretionary, not mandatory, a failure to meet any of them does not preclude discovery. For example, in *Intel*, the Supreme Court noted as to the first factor that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant," because the foreign tribunal itself can order the party to produce the evidence. 542 U.S.

7

at 264. Nonetheless, although the respondent was a party to the underlying case, the Supreme Court refused to preclude discovery, instead remanding to the lower courts to determine what if any judicial assistance to the foreign tribunal was appropriate. *Id.* at 246, 264, 266.

These factors strongly favor granting the requested discovery.

### A.     Respondents are not parties to the Peruvian proceedings.

Section 1782 discovery is particularly warranted where the respondent is not a participant in the foreign litigation, since nonparticipants may be outside the foreign tribunal's jurisdiction, and their evidence therefore otherwise unavailable. *Intel*, 542 U.S. at 264; *accord Chevron Corp. v. E-Tech International*, 2010 U.S. Dist. LEXIS 94396 at *12. That is precisely the circumstance here. No Newmont entity is a party to the foreign proceedings, and while Minera Yanacocha is located in Peru, Newmont and its related entities are located here, outside the jurisdiction of Peru's courts. This is not a situation where the "foreign tribunal has jurisdiction over [Newmont], and can [itself] order [Newmont] to produce evidence." *Id.* at 264. "[O]n this ground alone the first *Intel* factor is satisfied." *In re Roz Trading Ltd.*, Case No. 1:068 cv-02305-WSD, 2007 U.S. Dist. LEXIS 2112 at *6 (N.D. Ga. Jan. 11, 2007).

### B.     The discovery sought is relevant to and necessary for pending foreign proceedings.

The discovery sought from Newmont is undeniably relevant to the Peruvian proceedings. Relevant information is "presumptively discoverable" under Section 1782. *In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998); *accord Weber v. Finker*, 554 F.3d 1379, 1385 (11th Cir. 2009) (holding §1782 discovery is governed by the Federal Rules of Civil Procedure, which allow discovery of "relevant" evidence).

Mr. Campos seeks documents and a Rule 30(b)(6) deposition that will shed light on:

8

- The events leading up to November 29, 2011 relevant to establishing the conditions for the violence that unfolded that day, including facts relevant to the relationship between the PNP and the mining company;

- The precise set of events occurring on November 29, 2011 and in its aftermath;

- The level of coordination between the police and officials from the mining company during the events of November 29, 2001;

- The characteristics and intensity of the logistical support provided by the mining company to the police at the site of the Conga mine concession;

- If applicable, the instructions or orders given by the mining company to the PNP relevant to the events of November 29, 2011.

This evidence will assist the local prosecutor and the Peruvian courts in determining what precisely occurred on the relevant dates, whether the actions of the different parties amount to crimes, and who may be criminally or civilly liable. For example, with respect to the criminal investigation, the discovery requested will assist the prosecutor in determining the exact level of involvement of the Newmont Respondents in the events of that day, and whether to impute criminal liability to the company – either as an accomplice or a direct participant – or, since Peruvian law permits the prosecutor to identify third parties that should be held civilly responsible, Pérez Declaration at ¶ 3, whether the company and its employees should be brought in as civil third parties in the criminal investigation responsible for the harms done to the applicant and others.

In Peru, local prosecutors and civil courts are overworked, and face many pressures not to prosecute state agents involved in serious violations of human rights. Pérez Declaration at ¶ 7. It is thus of vital importance to the successful development of the criminal investigation and the civil case that the prosecutor and civil judges be aided by the evidentiary contributions provided by the aggrieved party. Pérez Declaration at ¶ 7.

### C. Peruvian courts would accept federal court assistance under Section 1782.

The local prosecutor and Peruvian judiciary will accept evidence produced through discovery in the United States; there is no bar to admitting such evidence. Pérez Declaration at ¶ 7; *Consorcio Minero S.A. v. Doe Run Res. Corp.*, 2011 U.S. Dist. LEXIS 112414 (E.D. Mo. Sept. 30, 2011) (granting application for discovery pursuant to 28 U.S.C. § 1782 after concluding that there was no evidence to rebut the presumption that Peruvian tribunals would be receptive to U.S. federal court assistance in both criminal and civil proceedings). Regardless, there is no requirement that the evidence be admissible in the Peruvian proceeding for it to be discoverable under Section 1782. *Brandi-Dohrn v. IKB Deutsche Industriebank Ag*, 673 F.3d 76, 81-82 (2d Cir. 2012) (collecting cases); *Weber*, 554 F.3d at 1385 (permitting discovery "for context" and holding that evidence need not be actually used in the foreign proceeding); *In re Roz Trading Ltd.*, 2007 U.S. Dist. LEXIS 2112 at *7 (finding it proper to grant § 1782 request, even if the foreign panel deciding would not order similar discovery or ultimately decides not to accept the specific discovery). Indeed, the Supreme Court held that a Section 1782 application may be granted even in the face of the foreign tribunal's express opposition. *See Intel Corp.*, 542 U.S. at 265 (holding that Section 1782 discovery could be proper despite the fact that the foreign tribunal "ha[d] stated in *amicus curiae* briefs to this Court that it does not need or want the District Court's assistance"); *see also In re Chevron Corp.* (*Donziger*), 749 F.Supp.2d 141, 161 (S.D.N.Y. 2010), *aff'd.* 409 Fed. Appx. 393 (2d Cir. 2010) (holding that even opposition of foreign court would not be dispositive).

### D. This application does not conceal an attempt to circumvent foreign proof-gathering restrictions.

This application is not an attempt to circumvent foreign proof-gathering restrictions. There is no such attempt where the foreign tribunal lacks jurisdiction to compel the respondent to provide evidence.[4]

---

[4] *In re Chevron Corp.* (*Berlinger*), 709 F.Supp.2d 283, 292-293 (S.D.N.Y. 2010), *aff'd Chevron Corp. v.*

The inquiry "is whether the discovery is being sought in bad faith." *Chevron Corp. v. Shefftz*, 754 F.Supp. 2d 254, 262 (D. Mass. 2010); *accord Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802 at *25-26 (N.D.N.Y. Aug. 18, 2008). This Application is a good-faith effort to obtain probative evidence for use in the Peruvian proceedings.

The information is not inherently undiscoverable in Peru, and the Peruvian judiciary would consider the evidence if Applicants can acquire it. Pérez Declaration at ¶ 7. But even if this particular evidence were inherently undiscoverable in Peru, that would not bar this discovery here. As the Supreme Court has ruled, Section 1782(a) does not require that evidence sought in the United States would be discoverable in the foreign tribunal. *Intel*, 542 U.S. at 247, 253, 259-62; *accord In re Chevron Corp. (Uhl, Baron, Rana & Associates)*, 633 F.3d 153, 163 (3d Cir. 2011) (granting Chevron discovery regardless of whether foreign court denied Chevron the same documents, because court might offer limited discovery yet accept relevant evidence if procured without its assistance); *In re Chevron Corp. (Rourke)*, 753 F.Supp. 2d 536, 540 (D. Md. 2010). This is so because "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions — reasons that do not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at at 261.[5]

---

*Berlinger*, 629 F.3d 297 (2d Cir. 2011); *accord In re Republic of Ecuador (Borja)*, No. C-10-80225 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158 at *12 (N.D. Cal. Sept. 15, 2010); *In re Republic of Ecuador (Mackay)*, 2:11-mc-00052 GSA, 2011 U.S. Dist. LEXIS 103360 at *7 (E.D. Cal. Sept. 12, 2011).

[5] Nor may a district court refuse Section 1782 discovery because a foreign tribunal has not yet considered a similar discovery request. *Metallgesellschaft*, 121 F.3d at 79. Because such a "quasi-exhaustion requirement" finds no support in the statute's plain language and contravenes its express purpose of improving assistance to foreign tribunals by imposing additional burdens on applicants, imposing such an extra-statutory requirement is an abuse of discretion. *Id.*

Indeed, where, as here, the foreign tribunal would accept information discovered in the United States, whether that tribunal itself permits the discovery is irrelevant. As the Supreme Court held, to preclude discovery in such circumstances "would serve only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws" and thus "would be senseless." *Id.* at 262.

In sum, Section 1782 "authorize[s] discovery which, in some cases, would not be available in foreign jurisdictions"; "[i]f district courts were free to refuse discovery based upon [such] unavailability . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *Metallgesellschaft*, 121 F.3d at 80. Thus, where a foreign court might be receptive to section 1782 evidence, even if it declined to order production of the same evidence, "it would be a stretch to conclude that the section 1782 proceeding was an attempt to circumvent [foreign] restrictions that somehow was offensive to the [foreign] Court." *Chevron Corp. (Uhl, Baron, Rana & Associates)*, 633 F.3d at 163.

*Cryolife* is instructive. There, the court recognized that where the party against whom discovery was sought was a party to the foreign litigation there ordinarily would be less need for § 1782 assistance, since the foreign tribunal itself could order the party to produce the evidence. 2009 U.S. Dist. LEXIS 3416 at *5-6. Nonetheless, the court held that because it was unclear whether such discovery was permissible in the foreign forum, that factor was neutral, and ultimately granted discovery. *Id.* at *5-7, 15.

### E. The discovery sought is narrowly tailored to the needs of the Peruvian proceedings, and is neither burdensome nor intrusive.

Discovery under Section 1782 is governed by the Federal Rules of Civil Procedure, and may be as broad as the Rules allow. *See, e.g., In re* 28 *U.S.C.* § 1782, 249 F.R.D. 96, 106-07 (S.D.N.Y. 2008);

*Fleischmann* v. *McDonald's Corp.,* 466 F. Supp. 2d 1020, 1029 (N.D. Ill. 2006). Here, the request for production is limited to information relevant to the specific Peruvian proceedings currently in progress, it is centered on an event that took place over a period of less than 24 hours, and seeks information only regarding the particular security policies, practices, and response necessary for a full understanding of the events of that day. The limited discovery sought from Respondents is thus neither unduly intrusive nor burdensome and falls well within the scope of discovery that the Federal Rules allow.

## IV.  CONCLUSION

The information sought by this Application is essential to the full and fair adjudication of the Peruvian proceedings. For the foregoing reasons, the Applicant respectfully requests that the Court enter an Order granting leave to serve Newmont with the discovery attached to the Declaration of Richard Herz as Exhibits 1 and 2.

Date:   January 24, 2014

Respectfully Submitted,

/s/ Richard Herz_____
Richard Herz, Esq.
Marco Simons, Esq.
Benjamin Hoffman, Esq.
Marissa Vahlsing, Esq.
EARTHRIGHTS INTERNATIONAL
1612 K Street N.W., Suite 401
Washington, DC 20006
Telephone:  (202) 466-5188
Facsimile:  (202) 466-5189
Email: rick@earthrights.org

Attorneys for Applicant Elmer Eduardo Campos-Álvarez