**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action 1:14-cv-00208-REB-BNB

ELMER EDUARDO CAMPOS-ALVAREZ,

    Applicant,

v.

NEWMONT MINING CORPORATION;
NEWMONT PERU SRL;
NEWMONT USA LTD,

    Respondents.

_____

**RESPONDENTS' RESPONSE TO APPLICANT'S
APPLICATION FOR ORDER TO SHOW CAUSE**
_____

Respondents Newmont Mining Corporation ("NMC"), Newmont Peru SRL ("Newmont Peru"), and Newmont USA Limited[1] ("Newmont USA" and, together with NMC and Newmont Peru, "Newmont"), by and through their undersigned counsel, hereby respond to Applicant's Application for Order to Show Cause, and in support thereof state as follows:

**FACTUAL BACKGROUND**

On January 24, 2014, Elmer Eduardo Canpos-Álvarez ("Applicant") applied to the Court for an order pursuant to 28 U.S.C. § 1782 (the "Application") to obtain discovery from Newmont purportedly for use in Peruvian judicial proceedings. Specifically, Applicant claims two separate proceedings exist. One is a criminal investigation against "two commanding police officers to determine whether they were direct co-authors of crimes committed" against the Applicant (the

---

[1] In his application, Applicant incorrectly refers to this entity as Newmont USA LTD.

"Criminal Investigation"). Application, p. 4. The other is a civil suit brought by Applicant against the Peruvian National Police and other high government officials (including the President of the Republic) before a court in Lima, Peru (the "Civil Suit" and, together with the Criminal Investigation, the "Proceedings").

The Proceedings stem from a violent protest in 2011, related to a new copper and gold mine in Peru called "Conga" to be built by Minera Yanacocha SRL ("Minera Yanacocha"), a large Peruvian mining company that is owned, approximately, 51% by Newmont affiliates, 44% by Compańia de Minas Buenaventura S.A.A and 5% by the International Finance Corporation. Declaration of Wilby Daniel Caceres Pinedo, ("Caceres Decl.") ¶ 9. The protest was part of a larger series of anti-Conga and anti-mining demonstrations that continue to this day. Caceres Decl., ¶ 6. Those protests are themselves part of a deep and long-standing political controversy in Peru regarding extractive industry development, the respective involvement of the local and national governments, and the role of the National Police. During the protests in 2011, several protesters and police were injured, including Applicant, who claims he was shot by Peruvian National Police personnel.

Through his Application, Applicant is trying to obtain information in the United States from Newmont, an indirect, partial owner of Minera Yanacocha. The discovery that Applicant has requested is extremely broad and not at all limited to the incident in which Applicant was injured in 2011. Caceres Decl., ¶¶ 6-7. In addition, much of the documentation that Applicant has requested is not located in the United States, but rather is in the possession of Minera Yanacocha in Peru. Caceres Decl., ¶ 8.

On April 2, 2014, Newmont filed a motion seeking leave to serve limited discovery on Applicant and for a scheduling conference. On April 11, 2014, before the Court could rule on Newmont's motion, Applicant applied for an order to show cause why the Court should not grant the Application. If the motion for leave to serve discovery is granted, Respondents will seek leave to supplement this brief as informed and clarified by the new information obtained.

## LEGAL STANDARD

"A request for discovery under § 1782 presents two inquiries: first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so." *In re Application of Nokia Corp.*, No. 1:07-MC-47, 2007 WL 1729664, at *2 (W.D. Mich. June 13, 2007) (quoting *In re Application of Grupo Qumma, S.A.*, No. M 8-85, 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005)). Regarding the first inquiry, a district court is authorized to grant an application for judicial assistance pursuant to § 1782 if the following statutory requirements are met: (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside and be found in the district of the district court ruling on the application for assistance. 28 U.S.C. § 1782(a).

Even if all the statutory requirements have been satisfied, the decision whether to grant the § 1782 application is within the discretion of the district court. In exercising that discretion, the court may, when relevant, consider the following factors: (1) whether "the person from whom discovery sought is a participant in the foreign proceeding," because "the need for

§ 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." *In re Application of Mesa Power Group, LLC*, 878 F.Supp.2d 1296 (S.D. Fla. 2012). Although these factors "bear consideration in ruling on a § 1782(a) request," *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004), they are neither mandatory nor exclusive, and district courts have considerable latitude in deciding which consideration to take into account.

## ARGUMENT

### I. Applicant Requests Documents That Are Not in Newmont's Possession and Are in the Jurisdictional Reach of Peruvian Courts.

Applicant is trying to obtain information in the United States from Newmont, an indirect, partial owner of Minera Yanacocha. However, many of the documents that Applicant requests are in the possession of Minera Yanacocha in Peru and are not located in the United States. Caceres Decl. ¶¶ 4, 8. In deciding whether to grant a § 1782 application, many courts consider whether the requested documents are located within the United States. *See In re Application of Nokia Corp.*, 2007 WL 1729664 at *5, n.4 (District Court uses its discretion to decline to order discovery under 28 U.S.C. § 1782).

As the United States Court of Appeals for the Seventh Circuit's holding in *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401 (7th Cir. 2004), directs, Applicant should request these documents of Minera Yanacocha directly, and should not seek them from Newmont through a

§ 1782 application. In that case, Kestrel Coal was involved in litigation in Australia with Longwall Roof Supports Ltd. In an effort to aid its litigation efforts, Kestrel Coal commenced a proceeding in the Eastern District of Wisconsin under § 1782, demanding that Joy Global, a holding company that was the indirect owner of Longwall Roof Supports, cause its subsidiary to retrieve documents in Australia, "have them shipped to Wisconsin and there provide them to Kestrel Coal, which w[ould] cart them to Australia." *Id*. at 402-03. Finding no evidence that required piercing the subsidiary's corporate veil, Judge Easterbrook denied Kestrel Coal's application. As Judge Easterbrook explained, the "[l]egal distinctions between corporations and their investors . . . are embedded in both statute and common law. Section 1782(a) itself neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity." *Id*. at 405. With the above referenced critical distinction in mind, the Seventh Circuit held that both § 1782 and the Federal Rules of Civil Procedure prohibited Kestrel Coal from discovering documents belonging to the foreign subsidiary by serving the United States parent company. *See also Norex Petroleum Ltd. v. Chubbs Ins. Co. of Canada*, 384 F. Supp. 2d 45, 55-57 (D.D.C. 2005) (denying a § 1782 application served on a subsidiary that sought the production of documents that were outside the United States and within the possession, custody and control of the subsidiary's parent corporation).

Similar to the situation in *Kestrel*, many of the documents that Applicant requests through his § 1782 application are located in Peru, in the possession of Minera Yanacocha, Newmont's indirect, partially-owned subsidiary. Caceres Decl., ¶ 8. These documents are not located in the

United States[2] and are not in the custody or possession of Newmont.  Section 1782 explicitly applies to an order from a district court "of the district in which a person resides."  Minera Yanacocha does not reside in the District of Colorado.  Moreover, Applicant has not alleged a reason, and indeed there is no reason, to pierce Minera Yanacocha's corporate veil and disregard the clear corporate distinction between the Peruvian subsidiary and its United States partial shareholder, a distinct corporate entity.  Accordingly, the Court should not require Minera Yanacocha to ship the requested documents located in Peru and in Minera Yanacocha's possession to Colorado, and there provide them to Applicant, who would only bring them back to Peru.  *In re Kreke Immobilien KG,* 2013 WL at *7 (describing such a requirement as "bordering on the absurd").  The proper course of action would be for Applicant to seek the desired documentation in Peru.  This is allowed under Peruvian civil and criminal procedure.  Caceres Decl. ¶¶ 9-14.  Applicant has not stated that he has made any effort to request the authorities in the Peruvian Proceedings to obtain any of the documents or information he is seeking in his application.

## II.     Applicant's Request is Unduly Intrusive and Burdensome.

Through his Application, Applicant requests an extremely broad array of documents that are not at all limited to the alleged 2011 incident involving Applicant.  In fact, many of the requested documents go far beyond the protest and Applicant's injuries at the heart of the Proceedings.  By way of example, Applicant requests "[a]ll documents relating to

---

[2] Although courts are not categorically prohibited from ordering the discovery of documents held outside the United States under § 1782, a significant amount of authority "suggests that a § 1782 respondent cannot be compelled to produce documents located abroad."  *In re Kreke Immobilien KG*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013) (citing *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007)); *see e.g.*, *In re Viega*, 746 F. Supp. 2d 8, 26 (D.D.C. 2010) (limiting the documents that respondent had to produce to those located within the United States).

communications between Newmont or any Newmont Entity and the Peruvian National Police or Private Security Providers relating to the provision of security services and engagement with protestors or civilians at or near the Conga Mine Concession, including any orders or instructions given." Applicant's Request for Production of Documents, p. 4. Applicant also seeks "[a]ll documents relating to efforts by Minera Yanacocha, Newmont or any Newmont Entity to reduce [the] risk of violent confrontations between protestors and mine security personnel, including members of the Peruvian National Police." *Id.*

Such broad requests are intrusive and overly burdensome and, if granted, are likely to require Newmont to produce an almost boundless class of documents, many of which are located outside the United States. "While few reported decisions address the issue of burdensomeness in the context of § 1782," *In re Application of OOO Promnefstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (§ 1782 request denied and found to be burdensome as bearing "little resemblance to those cases in which such applications are routinely approved – cases regarding a single document or report, or even those relating to a single transaction or event"), courts faced with the issue have recently begun to limit the potential fishing expeditions that many § 1782 applications engender. "Recent cases suggest that courts should be more inclined to grant applications that seek either a single document *or only those documents relating to a particular event.*" *In re Kreke Immobilien KG*, 2013 WL at *7 (emphasis added) (§ 1782 request rejected and found to be burdensome).

For example, in *Kreke*, the petitioner requested 16 categories of documents that the court divided into two groups: (1) documents prepared by or for Deutsche Bank relating to its purchase of a private German bank; and (2) documents detailing the private bank's continued

7

management of certain real estate investment funds subsequent to it becoming a Deutsche Bank subsidiary.  Fifteen of the petitioner's requests were not time-bound, there was no territorial limit to the discovery sought and some of the requests sought documents held by the private bank that predated its absorption into Deutsche Bank.  The court declined petitioner's overly broad and "unquestionably extensive request," indicating that it was disinclined to put such an "enormous demand" on Deutsche Bank.  *Id; see e.g.*, *In re Application of OOO Promnefstroy*, 2009 WL at *9 (holding that the petitioner's application, which contained 40 different requests and extended to a "wide array of documents related" to numerous business entities, bore "little resemblance to those cases in which [§ 1782] applications were routinely approved---cases requesting a single document or report, or even those documents relating to a single transaction or event"); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006) (granting petitioner's § 1782 application, finding the request of a single report, and documents and communications related to the preparation of that report, "sufficiently tailored to the litigation issues for which production [wa]s sought"); *In re Application of Servicio Pan Americano De Proteccion*, 354 F.Supp. 2d 269, 275 (S.D.N.Y. 2004) (granting a § 1782 application that requested documents related to insurance coverage for a single loss on a single day).

Much like the petitioner in *Kreke*, many of Applicant's requests do not pertain to a single event, are not time limited and are not relevant to the Applicant's injuries.  In fact, the lack of a clear relationship between Applicant's requests and the Proceedings in Peru lead one to question whether the requests are actually aimed at purposes other than assisting the Peruvian tribunals.  As a result, the Court should reject Applicant's overly broad § 1782 requests, *see e.g.*, *In re*

*Lazaridis*, 865 F.Supp. 2d 521, 527-28 (D.N.J. 2011) (rejecting as overly broad and unduly burdensome petitioner's § 1782 application seeking information regarding a non-profit organization's website that was not time limited and did not relate to specific posts on the website), or at the very least, follow the Supreme Court's suggestion in *Intel* and grant production of only those requests that are limited to the 2011 incident involving Applicant. *See Intel*, 542 U.S. at 265 (suggesting that the requests in a § 1782 application "may be . . . trimmed" where they are overly broad).

### III. Applicant Seeks Discovery for the Purposes of Harassment or in Bad Faith.

A district court may deny an application under § 1782 where it suspects that discovery is being sought in bad faith or for purposes of harassment. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n. 6 (2d Cir. 1995) ("[I]f the district court determines that a party's discovery application under § 1782 is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, the court is free to deny the application in total, just as it can if discovery was sought in bad faith in domestic litigation.").

It is apparent that Applicant is not using his § 1782 Application solely to obtain information for the Peruvian Proceedings. In fact, many of Applicant's requests suggest an attempt to obtain information from Newmont that will aid the activist organizations which have taken up Applicant's cause to advocate their positions in a deep and long-standing social and political controversy in Peru. For example, Applicant requests all documents "relating to efforts by Minera Yanacocha, Newmont or any Newmont Entity to reduce risk of violent confrontation between protestors and mine security personnel, including members of the Peruvian National Police," and all documents "relating to the Peruvian National Police's compliance or lack thereof

with Peruvian law pertaining to the provision of security services and the use of force in response to protest activity." Applicant's Request for Production of Documents, p. 4.  Applicant also seeks all documents "relating to or containing any lists of civilians living in or around the Conga Mine Concession or suspected of protest activity relating to Newmont or the Conga Mine Concession," as well as all documents "relating to any surveillance . . . of civilians in relation to their protest activity or suspected protest activity relating to Newmont or the Conga Mine Concession." *Id*. at p. 5.  These requests, which are not limited or directed to the incident involving Applicant in 2011, have the appearance of a "fishing expedition" with the goal of aiding the activist organizations assisting the Applicant in espousing their political and social goals, not Peruvian officials in the prosecution of the Proceedings.  (*See* Newmont's Motion for Leave to Serve Limited Discovery and Request for Scheduling Conference, and Respondents' Reply in Support of Their Motion for Leave to Serve Limited Discovery and For Scheduling Conference.)

This is not the situation contemplated by § 1782 in which lawyers for the party in the foreign country are seeking evidence in the United States to assist foreign tribunals.  Here the lawyers actually representing Applicant in the Peruvian Proceedings have not been heard from. All of the declarations supporting the Application have been from people working for the Peruvian National Human Rights Coordinator or from EarthRights International ("EarthRights"). *See* Respondents' Reply in Support of Their Motion for Leave to Serve Limited Discovery and For Scheduling Conference, pp. 4-7.  These constitute a second layer of interested parties, both of which are activist groups involved in the on-going debate in Peru over the role of public security forces in anti-mining protests.  Their involvement in this case is suspicious.  Was the

Application made as an excuse to get information, which will not, and is not intended to be, used in the Peruvian Proceedings, but instead will be used in the public arena in Peru? EarthRights holds itself out as, and is well known for, representing anti-corporate plaintiffs in Alien Tort Claims Act (28 USC §1350) suits in the United States. *See*, http://www.earthrights.org/legal/alien-tort-statute. Is this Application a fishing expedition to try to generate an Alien Tort Claim Act suit? As pointed out above, many of Applicant's discovery requests do not appear to address facts useful for the Peruvian Proceedings. Why was this discovery propounded?

If, as the facts suggest, Applicant filed the Application as part of a fishing expedition, the Court should deny his requests. *See In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988) (If the judge doubts that a proceeding is forthcoming, or suspects that the request is a "fishing expedition" or a vehicle for harassment, the district court should deny the request.") *abrogated on other grounds by Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

## CONCLUSION

For the foregoing reasons, the Court should deny Applicant's § 1782 application, or, in the alternative to reduce the scope of the requests, as described above.

Respectfully submitted this 2nd day of May, 2014.

                                          s/ Mark Wielga_____
                                           Mark Wielga
                                           TEMKIN WIELGA & HARDT LLP
                                           1900 Wazee St., Suite 303
                                           Denver, CO  80202
                                           Telephone:  (303) 292-4922
                                           Facsimile:  (303) 292-4921
                                           *wielga@twhlaw.com*

                                           *Attorneys for Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2014, I electronically filed the foregoing **RESPONDENTS' RESPONSE TO APPLICANT'S APPLICATION FOR ORDER TO SHOW CAUSE** with the Clerk using the CM/ECF system which will send notification of such filing to the following:

Richard Lawrence Herz, Esq.
Marco Simons, Esq.
Benjamin Hoffman, Esq.
Marissa Vahlsing, Esq.
EarthRights International
1612 K Street N.W., Suite 401
Washington, DC  20006
rick@earthrights.org
marco@earthrights.org
benjamin@earthrights.org
marissa@earthrights.org
*Attorneys for Applicant*

        s/   Mark Wielga
        Mark Wielga
        TEMKIN WIELGA & HARDT LLP
        *wielga@twhlaw.com*
        *Attorneys for Defendants*