**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 1:14-cv-00208-REB

ELMER EDUARDO CAMPOS-ALVAREZ,

      Applicant,

v.

NEWMONT MINING CORPORATION,
NEWMONT PERU SRL, and
NEWMONT USA LTD.,

      Respondents.

---

**RESPONDENTS' MOTION FOR PROTECTIVE ORDER**

---

## I.      INTRODUCTION

This motion concerns a handful of sensitive documents Respondents

(collectively, "Newmont") produced to Applicant ("Mr. Campos") pursuant to this Court's

March 16, 2015 Order Concerning Application for Discovery Under 28 U.S.C. § 1782

(the "Order") [#22].  In that Order, the Court granted in part and denied in part Mr.

Campos' request under § 1782 for discovery from Newmont for use in proceedings in

Peru to which Newmont is not a party.  Following the Court's Order, Newmont produced

to Mr. Campos over 1,600 documents.

A handful of those documents – eight, to be specific – contain information

sufficiently sensitive that Newmont expressed concern to Mr. Campos' counsel about

harm that might result from their widespread distribution.  With that in mind, the parties

entered a temporary confidentiality agreement that allowed Newmont to produce those

eight documents with a "Confidential" label.  Under that agreement, Mr. Campos agreed to (1) use the documents marked "Confidential" *only* for purposes of the Peruvian proceedings that were the subject of his § 1782 Application, and (2) use "best efforts" to preserve the documents' confidentiality within those proceedings (for example, by using any available "sealing" mechanisms when filing documents in Peru's courts).[1]  The idea was to allow Mr. Campos to use the Confidential documents as necessary in the Peruvian proceedings, while protecting Newmont from other uses – such as publication on activists' websites – not contemplated by § 1782 or the Court's Order.

That temporary agreement is about to expire, and Mr. Campos and his counsel (EarthRights International) refuse to make it permanent.[2]  Though Mr. Campos and EarthRights previously represented that the purpose of their Application was to simply obtain discovery for use in the foreign proceedings, they now insist they should be allowed to use the documents however they please.  For nearly all the documents Newmont produced, including a number that Newmont in the interest of compromise agreed to not mark confidential, Newmont has not insisted on *any* use limitations.  But for the small collection of sensitive documents that are the subject of this motion, Newmont respectfully asks the Court to hold Mr. Campos to his repeatedly stated motive for obtaining the documents (the only asserted motive approved by this Court): use in the Peruvian proceedings, and nothing more.

---

[1]   *See* Exhibit 1 – 6//3/15 Email Exchange between M. Funk and R. Herz.

[2]   Mr. Campos has agreed that the documents will remain protected pending the Court's ruling on this Motion.

## II.    BACKGROUND

### A.    Mr. Campos' Application.

Mr. Campos claims he was injured by the Peruvian National Police ("PNP") as part of an altercation that occurred on November 29, 2011, when he and others were protesting Newmont's mining activities in the Cajamarca region of Peru.[3]  He alleges that criminal and civil proceedings are under way in Peru in connection with the incident.[4]  He agrees that Newmont is not a party to those proceedings.[5]

Under 28 U.S.C. § 1782, Mr. Campos applied to this Court for an order allowing him to obtain discovery from Newmont for use in the Peruvian proceedings.  In his Application, Mr. Campos repeatedly emphasized that his purpose in seeking the discovery was for use in those proceedings, as § 1782 requires:

- "As Section 1782 permits, Applicant seeks this discovery for use in pending foreign proceedings in which Applicant is identified as an aggrieved party, or a plaintiff." (App. [#1] at 1)

- "[T]he discovery is 'for use in' a foreign proceeding." (App. [#1] at 1)

- "Plaintiffs seek discovery for use in a proceeding before a foreign tribunal, specifically, a criminal case currently under investigation by the office of the Segunda Fiscalía Provincial Penal Corporativa de Celendin and a civil action before the 20th Civil Court in Lima." (App. [#1] at 6)

- "This Application is a good-faith effort to obtain probative evidence for use in the Peruvian proceedings." (App. [#1] at 11)

- "[T]he request for production is limited to information relevant to the specific Peruvian proceedings currently in progress . . . ." (App. [#1] at 13)

---

[3]    Application [#1] at 1.

[4]    Application [#1] at 1-2.

[5]    Application [#1] at 8.

- "The information sought by this Application is essential to the full and fair adjudication of the Peruvian proceedings." (App. [#1] at 13)

Aside from use in the Peruvian proceedings, Mr. Campos identified no other purpose for which he sought discovery from Newmont.

## B.     Newmont's Response and Mr. Campos' Reply.

In response to Mr. Campos' request, Newmont expressed concern that he was using § 1782 as a pretext to obtain information *not* for use in the Peruvian proceedings, as he had repeatedly represented, but instead for use in the public arena by anti-mining activists, including his counsel, EarthRights International.[6]  Mr. Campos assured the Court that Newmont's concerns were based only on "speculat[ion]" and "innuendo," and promised that his discovery requests had "clear litigation purposes."[7]

## C.     The Court's Order.

The Court, accepting Mr. Campos at his word, granted in part and denied in part Mr. Campos' Application.[8]  In its Order, the Court indeed acknowledged Newmont's concerns about Mr. Campos' motives:

> Additionally, the respondents suggest that the requests of Mr. Campos represent a spurious effort to obtain information from the respondents that will aid activist organizations in a long-standing social and political controversy in Peru, as opposed to a legitimate effort to gather information to further the ongoing and evolving two Peruvian proceedings.[9]

---

[6]   Response to Application [#18] at 9-11.

[7]   Reply in Support of Application [#20] at 2, 8-9.

[8]   Order [#22].

[9]   Order [#22] at 4.

Then, in the very next sentences, the Court agreed that Mr. Campos' requests should

be limited to exclude information *not directly related to the events at issue* in the

*Peruvian proceedings* that were the basis for his § 1782 Application:

> To the extent Mr. Campos seeks information related directly to the
> November 29, 2011, shooting, I find and conclude that production by the
> respondents of information and testimony under § 1782 is appropriate.
> However, I agree with the respondents that many of the requests of Mr.
> Campos are spuriously overly broad . . . .[10]

The Court's basis for granting Mr. Campos' request, in short, was clear – so he could

use that information in the Peruvian litigation.

## D.   EarthRights Goes to the Media (and Promptly Mischaracterizes this Court's Order).

Three days after the Court's Order, EarthRights issued a press release in which it

characterized the Court as having "ordered Colorado-based Newmont Mining

Corporation to turn over evidence relating to police repression of protestors against

Newmont's proposed Conga mine in northern Peru."[11]  Never mind that neither the

Court's Order nor the discovery requests on which it was based made any reference at

all to "police repression of protesters."

A few weeks later, on April 22, 2015, EarthRights issued another press release in

which it alleged that "Newmont has responded to community opposition to its mine by

using police and private security to harass and intimidate local residents and

landowners," and then repeated its mischaracterization that this Court "ordered

---

[10]   Order [#22] at 4.

[11]   *Available at* http://www.earthrights.org/media/federal-court-orders-newmont-mining-turn-over-evidence-peruvian-wounded-protest (last visited July 1, 2015).

Newmont to turn over evidence relating to police repression of protesters."[12]  No mention, of course, that Newmont is *not even a party* to the Peruvian proceedings relating to which it was ordered to produce discovery.

On May 1, 2015, Newmont produced to Mr. Campos over 1,600 documents.  A few days after that, Boulder news outlet KGNU reported: "EarthRights International reported to KGNU today that Newmont complied with the court order and turned over 1600 pages of documents to them this week."[13]

Newmont does not know if Mr. Campos used any of the produced documents in the Peruvian proceedings related to his injury; Newmont does know, however, that its expectation that EarthRights sought this discovery to promote its agenda in the public arena – an expectation EarthRights in Court filings called mere "speculation" and "innuendo" – was confirmed almost immediately after the Court's Order.

## E.    The Interim Confidentiality Agreement.

In part because of EarthRights' demonstrated penchant for going public with distortions of what is happening in court, Newmont was concerned with turning over a small subset of sensitive documents to Mr. Campos and his counsel.  So Newmont proposed a standard confidentiality agreement that would allow Newmont to mark particularly sensitive documents "Confidential."[14]  Documents so designated would be

---

[12]    *Available at* http://www.earthrights.org/media/peruvian-community-leaders-challenge-largest-us-gold-mining-company-stop-human-rights (last visited July 1, 2015).

[13]    *Available at* http://news.kgnu.org/2015/05/former-president-of-peru-alejandro-toledo-dodges-kgnu-question-about-newmont-and-school-of-the-americas-again-newmont-turns-over-documents-after-court-order/ (last visited July 1, 2015).

[14]    *See* Exhibit 1 – 6//3/15 Email Exchange between M. Funk and R. Herz.

- 6 -

protected as follows: (1) Mr. Campos and EarthRights would not use them for any

purpose *besides* the Peruvian proceedings that were the subject of Mr. Campos' § 1782

Application; and (2) within those proceedings, Mr. Campos and EarthRights would use

"best efforts" to maintain the documents' confidentiality, including by using any "sealing"

mechanisms when filing the documents in court, and formally requesting that anyone

provided the documents in connection with the proceedings maintain their

confidentiality.[15]   The idea was to strike a fair balance between Mr. Campos' legitimate

need to use the documents in the Peruvian proceedings, and Newmont's interest in not

having the documents used for other non-litigation purposes.

Mr. Campos and EarthRights, despite lengthy conferral efforts, in the end refused

to agree to Newmont's proposal on a long-term basis.  They did, however, agree to be

bound by the terms of the proposal on a temporary basis, so that Newmont could

produce the "Confidential" documents in advance of a now-concluded deposition

without fear that Mr. Campos or EarthRights would use the documents for other

purposes.  The parties agreed to try to work out a long-term confidentiality agreement,

or, if they could not, extend the temporary agreement pending this Court's resolution of

the issue – which has now become necessary.

F.      **The Confidential Documents.**

Newmont was extremely conservative in designating documents as "Confidential"

under the parties' interim confidentiality agreement.  Consider that out of over 1,600

produced documents, Newmont designated only *eight* "Confidential."  Though described

---

[15]   *Id.*

more fully below in the "Discussion" section of this motion, those eight documents are "Confidential" for two main reasons:

- <u>Security Threat</u>.  Several of the documents marked "Confidential" describe in detail the security response – by both public and private security forces – to threats to Newmont's property and employees.   Widespread distribution of such documents would pose safety risks to (1) Newmont's operations in Peru (where the relationship with opponents of the mine remains volatile) and throughout the world; and (2) individuals involved in the security response.

- <u>Company-Internal, Proprietary, and Sensitive Information</u>.   Other documents marked "Confidential" include proprietary, internal public messaging analyses and recommendations, which would inherently be rendered ineffective by widespread public disclosure.

Again, Newmont has agreed that Mr. Campos may use these documents as legitimately necessary in the Peruvian proceedings.  All Newmont asks is that Mr. Campos and EarthRights not use the documents for purposes other than those proceedings, and attempt in good faith to maintain their confidentiality within those proceedings.  After all, those proceedings were both the only *stated* and the only *permissible* basis for Mr. Campos' application under § 1782.

## III.   DISCUSSION

**A.   The Court Should Exercise its Broad Discretion Under § 1782 to Limit Mr. Campos' Use of the Sensitive Documents to the Peruvian Proceedings that Were the Stated (*and Only*) Basis for His § 1782 Application.**

The statute Mr. Campos invoked in his Application – 28 U.S.C. § 1782 – allows a party to seek discovery "for use in a proceeding in a foreign or international

tribunal . . . ."  Nothing in § 1782 suggests that discovery obtained ostensibly "for use in

a foreign proceeding" may, in actuality, be used for any purpose at all.  Courts have, on

occasion, granted parties some latitude to expand their use of § 1782 discovery beyond

the *specific* proceeding named in the § 1782 application to other "*proceedings*

involv[ing] similar issues [that were] 'within reasonable contemplation' at the time of the

petition."  *See In re Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-KLM(MEH),

2007 WL 3268475, at *3 (D. Colo. Oct. 30, 2007) (emphasis added) (quoting *Intel Corp.*,

542 U.S. at 259); *cf. In re Kegel*, 67 F. Supp. 3d 1054 (D.N.D. 2014) ("[W]hether

evidence obtained for a specific proceeding pursuant to a § 1782(a) order can freely be

used in other proceedings . . . is at best questionable.").  But no court has said that a

party obtaining discovery for the purposes authorized by § 1782 may then make *carte*

*blanche* use of that discovery in the public arena or otherwise outside of proceedings

"reasonably contemplated" by the application.[16]  And to interpret the statute that way

would invite parties to abuse § 1782's unique discovery mechanism.  *See, e.g.*, *Seattle*

*Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984) (ruling that the court may exercise its

"equitable powers" to prevent "abuse of [the discovery] process," as when a party uses

civil discovery to obtain information for "public release" to damage another's reputation).

In this case, other than the Peruvian proceedings named in his Application, Mr.

Campos has failed to identify any other proceeding in which he contemplates using the

---

[16]    In his Reply in Support of Application [#20], Mr. Campos cited some cases for the proposition that
the mere fact that documents obtained pursuant to § 1782 might be used for other purposes is an
insufficient basis for denying a § 1782 application.  Those cases are distinguishable on a number of
grounds, but most prominently, Newmont is not seeking to deny Mr. Campos access to the sensitive
documents (he already has them); Newmont merely seeks to limit Mr. Campos' use of those documents
to the purpose authorized by § 1782 and repeatedly avowed by Mr. Campos in his Application.

Confidential documents.  And Newmont *already agreed* (consistent with the basis for this Court's ruling) that (1) Mr. Campos *may use those eight documents in the Peruvian proceedings*, provided he (2) uses "best efforts" to keep them confidential within those proceedings.  Stated simply, Newmont is not trying to prevent Mr. Campos from using the documents for the purposes stated in his § 1782 Application and authorized by this Court; to the contrary, Newmont merely seeks to prevent Mr. Campos and EarthRights from using only 8 of the over 1,600 produced documents for purposes *other than* those stated in Mr. Campos' § 1782 Application and the Court's Order.

Mr. Campos already agreed to that reasonable limitation on a temporary basis. Under § 1782, the Court has "wide discretion" to make it permanent.  *See Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("Section 1782 grants district courts wide discretion to determine whether to grant discovery and equally wide discretion to tailor such discovery to avoid attendant problems.").  Notably, other courts have entered protective orders limiting the use of *all* discovery obtained pursuant to a § 1782 application to the foreign proceedings named in that application. *See*, *e.g.*, *Norcast S.ar.l. v. Castle Harlan, Inc.*, No. 12 CIV. 4973 PAC, 2014 WL 43492, at *9 (S.D.N.Y. Jan. 6, 2014).  Newmont does not ask the Court to go even that far – for nearly all the documents Newmont produced, it has not insisted on *any* use limitations.

For the eight sensitive documents marked "Confidential," however, Newmont takes the lesser step of asking the Court to exercise its discretion under § 1782 to limit Mr. Campos' (and his counsel's) use of those documents to the Peruvian proceedings, and to use "best efforts" to keep them confidential within those proceedings.

- 10 -

Those mild restrictions, on all fours with this Court's prior ruling, are appropriate in light of:

1. <u>Statutory Purpose</u>.  Section 1782's purpose, which is to facilitate discovery "for use in a proceeding in a foreign or international tribunal" – not some other use;

2. <u>Mr. Campos' Promises</u>.  Mr. Campos' repeated avowals that he sought the discovery for use in the Peruvian proceedings – not some other use;[17] and

3. <u>EarthRights' Non-litigation Uses</u>.  EarthRights' demonstrated pattern of using this § 1782 proceeding for purposes *other than* the Peruvian proceedings.[18]

In short, for at least the eight documents at issue, the Court should hold Mr. Campos to his repeatedly-stated motive: to use the documents in the Peruvian proceedings, and not for some other purpose.

**B.      Even Setting Aside the § 1782 Context, a Protective Order is Appropriate.**

As discussed, § 1782 is a unique discovery mechanism designed to facilitate discovery for a discrete purpose: use in particular foreign proceedings.  Section 1782's limited scope is basis enough to restrict Mr. Campos' use of the documents at issue to the Peruvian proceedings that were the sole basis for his § 1782 Application.

But even setting aside the unique § 1782 context, a protective order is appropriate here even under ordinary principles of civil discovery:

---

[17]    *See* Section II.A., above; Application [#1] at 1, 6, 11, 13.

[18]    *See* Section II.D., above.

- 11 -

**1.   Using civil discovery to obtain documents for non-litigation purposes is an abuse of the system.**

In the first place, it is an abuse of the system to use civil discovery tools to obtain documents for non-litigation purposes.  In *Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 387 (D. Colo. 2000), the plaintiff objected to entry of a protective order on grounds that "it improperly prevent[ed] her from using information obtained through discovery to embarrass the defendants and to encourage public debate about the appropriate treatment of children in public schools."  (Record citations omitted.)  The court summarily rejected that argument, explaining:

> Civil discovery is a device to allow parties to obtain information for the purpose of preparing and trying a lawsuit.  Consequently, and contrary to the plaintiff's argument, a party has no right to make unrestricted disclosure of information obtained through discovery.

*Id.*  In reaching that conclusion, the *Gillard* court quoted at length from the U.S. Supreme Court's decision in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35-36 (1984), in which the Court explained:

> Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.  Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c).  There is an opportunity . . . for litigants to obtain – incidentally or purposefully – information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

Here, Mr. Campos invoked a United States civil discovery tool for the purported purpose of advancing Peruvian proceedings related to his injuries.  Assuming that was, in fact, his purpose, he should have no objection to limiting his (and his counsel's) use

- 12 -

of the documents to those proceedings.  As stated in *Gillard*, Mr. Campos and his

counsel do not have a "right to make unrestricted disclosure" of information obtained

through civil discovery.  *Gillard*, 196 F.R.D. at 387.

### 2.   The sensitive nature of the documents marked "Confidential" requires that they be protected from unnecessary disclosure.

By separate letter, Newmont will provide the Court the "Confidential" documents

that Newmont asks be used only for purposes of the Peruvian proceedings that were

the subject of Mr. Campos' § 1782 Application.  Following are brief descriptions of the

documents, along with additional explanations – beyond the general limited scope of §

1782 – for why use of the documents should be limited to the Peruvian proceedings:

- **Documents NMT-000450-71, 1512-17, 1936, 1937**

These documents are internal Newmont reports that detail how private and public

security forces responded to security threats to Newmont property and employees in

November 2011.  Broad public disclosure of how security forces assess and respond to

security threats would pose a safety risk to the Peruvian National Police as well as

Newmont's operations and personnel in Peru, where the relationship with anti-mining

protestors remains volatile.  Mr. Campos has no legitimate legal need to use these

documents for purposes other than the Peruvian proceedings.  As such, a protective

order limiting his use of these documents to those proceedings is appropriate to lessen

the security risk created by disclosure.  *See*, *e.g.*, *Ulibarri v. City & Cnty. of Denver*, No.

07-CV-01814WD, 2009 WL 260945, at *4 (D. Colo. Feb. 4, 2009) (limiting disclosure of

detention facility policies and procedures because of safety risks disclosure would pose

- 13 -

to staff and facility); *In re Letters Rogatory Issued by Nat. Court of First Instance in Commercial Matters N. 23 of the Federal Capital of the Argentinean Republic*, 144 F.R.D. 272, 276 (E.D. Pa. 1992) ("The appropriate response to [security] concerns is for this Court to enter a protective order, modifying the subpoena, requiring that [the requester] neither disclose nor publish any of the materials listed in the [discovery].").

- **Documents NMT000472-84, 1413-75**

These documents are confidential reports Newmont commissioned concerning its image in the news and social media related to protests of its mining activities in Peru. The reports include recommendations about how Newmont should approach public messaging going forward.  The effectiveness of Newmont's public messaging strategies would necessarily be diminished if those strategies were broadly distributed.  Mr. Campos has no legitimate need to use these documents for purposes other than the Peruvian proceedings (and it is hard to imagine how they would be relevant even there). As such, a protective order limiting his use of these documents to those proceedings is appropriate to protect Newmont from competitive harm that might result from disclosure of its public messaging strategies.  *See*, *e.g.*, *A Major Difference, Inc. v. Wellspring Products, LLC*, 243 F.R.D. 415, 417 (D. Colo. 2006) (finding entry of a protective order appropriate to protect, among other things, a business's marketing strategies).

## IV.   CONCLUSION

In his § 1782 Application, Mr. Campos repeatedly avowed that his purpose in seeking discovery from Newmont was for use in particular Peruvian proceedings, to which Newmont is not a party.  Despite those representations, Newmont has not

- 14 -

insisted on any use limitations for nearly all of the 1,600 documents it produced. Moreover, even for the handful of sensitive documents that are the subject of this motion, Newmont has *agreed* that Mr. Campos and EarthRights *may use the documents in the Peruvian proceedings* referenced in their Application.  All Newmont asks is that they (1) not use the documents for purposes *other than* those proceedings, and (2) use "best efforts" to keep the documents confidential within those proceedings.

If Mr. Campos and his counsel are allowed to use these documents to promote their anti-mining agenda in the public arena, they will have successfully abused the civil discovery system in precisely the way warned against by other courts, *see*, *e.g.*, *Gillard*, 196 F.R.D. at 387, and anticipated by Newmont in contesting Mr. Campos' Application.[19]  Newmont respectfully asks the Court to not let that happen.

## CERTIFICATE OF CONFERRAL

Respondents' counsel conferred at length with Mr. Campos' counsel, including by email and telephone, and by providing counsel a draft of this Motion more than a week before it was filed.  Mr. Campos opposes the relief requested.

Respectfully submitted this 17th day of July, 2015.

*s/ Alex H. Bailey*
Alex H. Bailey
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone:  (303) 291-2300'
Facsimile:  (303) 291-2400
Email:  abailey@perkinscoie.com
Attorneys for Respondents

---

[19]   Response to Application [#18] at 9-11.

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2015, I electronically filed the foregoing **MOTION**

**FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which

will send notification of such filing to the following e-mail addresses:

- Richard Lawrence Herz
  rick@earthrights.org
- Marissa Ann Vahlsing
  marissa@earthrights.org

- Mark A. Wielga
  wielga@twhlaw.com
- Scott William Hardt
  hardt@twhlaw.com

*s/ Alex H. Bailey*
Alex H. Bailey
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400
Email:   abailey@perkinscoie.com

Attorneys for Respondents