**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-00208-REB-BNB

ELMER EDUARDO CAMPOS-ALVAREZ,
    Applicant,

v.

NEWMONT MINING CORPORATION, *et al.*,
    Respondents.

**APPLICANT'S RESPONSE IN OPPOSITION TO RESPONDENT'S MOTION FOR PROTECTIVE ORDER**

**INTRODUCTION AND BACKGROUND**

Respondents' Motion for a Protective Order, Docket No. 29 (July 17, 2015) [hereinafter "Motion"], provides no valid basis for designating any documents as confidential. Nonetheless, Applicant was willing to accept Newmont's designations, to agree to protect their confidentiality pending a formal agreement or judicial decision, and to use best efforts to file these documents confidentially in Peruvian courts.

Applicant's *only* caveat was that *if* the documents could not be filed or maintained under seal in Peru – that is, *if*, through no fault of Applicant, the documents entered the public domain – Applicant should be able to comment on them just as anyone else could. Indeed, Applicant's counsel informed Newmont that for counsel to agree not to comment on public documents would be unethical. Declaration of Richard Herz ("Herz Decl.") ¶¶ 6, 8. Although Applicant offered to treat documents that would not qualify for confidential treatment as if they were confidential, to the extent that the rules of professional responsibility permit, Newmont refused. Instead, it chose to bring this

1

Motion, which consists largely of a misguided attempt to vilify Applicant's counsel.

Newmont's Motion should be denied in its entirety. It has not met its burden of rebutting the presumption in favor of disclosure and demonstrating good cause for protecting the documents. Newmont offers only conclusory statements, exactly the type of statements that do not meet their Rule 26(c) burden. Moreover, Newmont wants to preclude both Applicant and counsel from commenting on documents available to the public. Even if that were ethical, which it likely is not, Newmont's justification is based on the perceived "purpose" of the discovery, even though Applicant and counsel have very clearly demonstrated a proper purpose for the documents under 28 U.S.C. § 1782.

## ARGUMENT

**I. Newmont has not met its burden of showing good cause for designating the documents as confidential.**

Pretrial discovery is public unless compelling reasons exist to deny public access and issue a protective order. *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789-90 (1st Cir. 1988). Under Rule 26(c), a demonstration of good cause is a prerequisite to any protective order, and requires more than merely "conclusory statements" or "stereotypical assertions."[1] "A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 102 n.16 (1981). The movant bears the burden of establishing good cause. *Id.*; *see also Exum v. United States Olympic Comm.*, 209 F.R.D. 201, 206

---

[1] *See e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984); *Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 206 (D. Colo. 2002); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 7 (1st Cir.1986); *Pub. Citizen v. Liggett Grp., Inc.,* 858 F.2d 775, 789-90 (1st Cir. 1988).

2

(D. Colo. 2002). Simple claims that the documents are confidential are not sufficient, nor are conclusory or stereotypical statements and assertions. *Gulf Oil*, 452 U.S. at 102 n.16*; Exum*, 209 F.R.D. at 206.

Newmont fails to demonstrate good cause. Its brief argument for confidentiality offers no more than a few broad, conclusory sentences, *see* Mot. at 13-14, rather than the "particular factual demonstration of potential harm" required by *Gulf Oil*, 452 U.S. at 102 n.16. And the parties' interim agreement is no substitute for this required demonstration; "the good cause requirement must be met even if the parties agree, in whole or in part, to a protective order*." Exum,* 209 F.R.D. at 206.

### a. Newmont fails to meet the test for each specific document.

Newmont argues that disclosure of these eight documents will (1) create a security risk to its security personnel and operations in Peru, and (2) jeopardize documents containing proprietary, internal public messaging analyses. Mot. at 8, 13-14. Newmont's conclusory justifications fail to show how disclosure will create these risks.

#### *i. Documents NMT000450-71, 1512-17, & 1936-37*

Documents NMT000450-71 & 1512-17 document the November 2011 protests near the Conga mine concession, and the corresponding response of private and public security forces. NMT000450-71 also assesses this response in relation to Newmont's obligations under the Voluntary Principles on Security and Human Rights. NMT001936 - 37 are surveys collecting information on Newmont's obligations under the Voluntary Principles, and community and external relations, to compile data for public reporting.

Newmont suggests that because these documents detail how security forces

responded to threats to Newmont, public disclosure would pose a safety risk to the Peruvian National Police and Newmont's operations and personnel. Mot. at 13. They are wrong. Aside from the names of a handful of police and Newmont personnel, which can be redacted, the documents contain no sensitive or confidential information whose disclosure would pose a real and credible risk to the police or Newmont.

The fact that these documents detail a police response to protestors is a compelling reason for disclosure, not confidentiality; the "lawfulness of police operations is a matter of great concern to citizens in a democracy and protective orders must not be granted without that public interest in mind." *King v. Conde,* 121 F.R.D. 180, 190 (E.D.N.Y. 1988); s*ee also Welsh v. City & Cnty of San Francisco,* 887 F. Supp. 1293, 1302 (N.D. Cal. 1995); *Floren v. Whittington,* 217 F.R.D. 389, 391-92 (S.D.W. Va. 2003). Courts have cautioned against issuing "routine protective orders" and should be alert for opportunities to redact sensitive information. This includes cases concerning past violence between a police officer and the plaintiff, where the officer's personal information and home address can be redacted, if they have shown that disclosure of this information poses a real and credible danger. *King,* 121 F.R.D. at 190; *Sasu v. Yoshimura,* 147 F.R.D. 173, 176 (N.D. Ill. 1993). Redaction ensures that the protective order is narrowly tailored and not overbroad. *See, e.g., Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (noting that where only portions of a document contain information that qualifies for protection, "all that would be required . . . would be redaction of portions of the document").

Newmont fails to present evidence of a real and credible danger to the Peruvian

National Police and Newmont's operations and personnel if disclosure occurs. These documents are not the kind of training or operational guides that might qualify for protection.[2] They are summaries of the security response to particular protests in which the police opened fire on protesters resulting in injuries, including the paralysis of the Applicant. The documents do not provide strategic guidance whose disclosure might risk future operations.

NMT000450-71 & 1512-17 are the kind of documents that *King* suggests present a great public interest in disclosure – they assess the lawfulness of the police's response to the November 2011 protests. The content is primarily descriptive; the only conceivably sensitive information is the names of a police and Newmont security personnel, which Applicant is willing to redact.

Some information in these documents is also disclosed in the "non-confidential" documents, including six PowerPoint slides detailing the "Security Department Confrontation" on November 29, 2011, *see* Declaration of Katherine McDonnell ("McDonnell Decl.") Ex. 1 at NMT000889-96, and factual updates disclosed in "Situation Reports," McDonnell Decl. Ex. 2 at NMT000806, 811, 814, 818, 819, 856. The "Situation Reports" document the events of November 25th and 29th, and the content is of the same nature as the information in NMT00045-71 & 1512-17. *See* McDonnell

---

[2] Protective orders may be appropriate to prevent weakening law enforcement programs. However, the proponent must still show good cause and risk from disclosure. In the context of assessing the "official information privilege" courts have held that a party seeking to limit disclosure must provide a declaration attesting to the specific programs at risk, their value to law enforcement, the extent of harm projects to be caused by disclosure, and show consideration of the mitigating effects of protective orders and redactions. *King,* 121 F.R.D. at 192. The evidence must show that disclosure would reveal confidential law enforcement tactics that would compromise law enforcement investigations. *Id.*

Decl., Ex. 2 at NMT000806-23 & 846-69. There even appear to be inconsistencies between the "confidential" and "non-confidential" documents relating to the violence between the security forces and protesters on November 25th, and the persons who were subsequently detained and injured. Confidentiality would be detrimental for the public record, as it would be incomplete and/or incorrect. *See* e.g. NMT000454; McDonnell Dec. Ex. 2, NMT000811, 814, 818, 819. Additionally, Newmont designates Annex A as confidential, which is factual information compiled from public local media sources. NMT000464-71.

Moreover, the fact of coordination between Newmont and the Peruvian National Police is not confidential and is discussed in other documents. McDonnell Decl. Ex. 3, NMT000587, 607, 615, 623, 625, 626, 629; Ex. 4, NMT000162. Additionally, it is likely that NMT000450-471 is based upon numerous photos and videos that were disclosed in the "non-confidential" disclosure.[3] *See* NMT000471, Annex B. Moreover, it is clear from the "Situation Reports," photos and videos that Newmont's sources on the ground were closely monitoring and documenting the movements of the protesters, including photographing and filming their movements. *See* McDonnell Decl. ¶¶ 8-9 & Exs. 1, 2, 5. These "strategies" are not confidential.

NMT001936-37 are surveys prepared by Newmont, in which the survey participants *specifically recognize* that the information provided may be used in

---

[3] In addition to the photos included with this motion for illustrative purposes, other photos produced appear to show the protests and injured persons. McDonnell Decl. ¶ 8. Several videos were also produced, timestamped November 29, 2011, one of which appears to show a confrontation between the security forces and protesters at the mine site. McDonnell Decl., ¶ 9.

Newmont's "public reporting." Again, as a precaution, Applicant accepts that redaction of any personal identifying information in the surveys is appropriate.

The cases cited by Newmont are not instructive. In *Ulibarri v. City & County of Denver,* No. CIV.A. 07-CV-01814WD, 2009 WL 260945, at *3 (D. Colo. Feb. 4, 2009), this Court applied the "official information" privilege, a privilege that protects the security policies and practices of correctional facilities, to issue a protective order over redacted pages of the Pre-Arraignment Detention Facility Policies and Procedure Manual. This Court found that particularized harm would result from disclosing these policies, as it "could compromise the safety of the staff of the facility in matters such as inmate escape or the release of an inmate who is not eligible for release." *Id.* at *4. Similarly, *In re Letters Rogatory,* 144 F.R.D. 272 (E.D. Pa. 1992), raised national security concerns over disclosing a confidential contract with the Argentinean National Air Force. *Id.* at 275-76. None of the concerns from these cases are applicable here.

The documents provide an important record of the events that transpired in November 2011, which enable an assessment of the lawfulness of the police's use of force against protesters. While Newmont relies on unsupported generalized security concerns, the only likely negative result of disclosure would be harm to the defendant's reputation – which is not a basis for a protective order. *See Culinary Foods, Inc. v. Raychemn Corp.,* 151 F.R.D. 297, 301 (N.D. Ill. 1993).

### ii.  Documents NMT000472-84, 1413-75

Documents NMT000472-84 & 1413-74 are reports on Newmont's media strategy relating to events at the Conga mine in November-December 2011. Newmont suggests

7

that their disclosure would diminish public messaging strategies and subject Newmont to competitive harm. Mot. at 14. Newmont fails to show how strategies prepared to analyze a specific event nearly four years ago would be jeopardized by disclosure.

Information that is stale is not confidential. *United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975). The proponent must make a particularized showing that old information remains commercially sensitive. *Koch v. Greenberg,* No. 07 CIV. 9600 BSJ DF, 2012 WL 1449186, at *4 (S.D.N.Y. Apr. 13, 2012). Assessing staleness is case-specific, but courts have found that marketing strategies from years prior are stale. *See United States v. Int'l Bus. Machines Corp,* 67 F.R.D. at 46-49 (denying continued protection of documents three to fifteen years old, including a five-year-old report on future marketing approaches, because "[they] reveal directly little, if anything at all, about Honeywell's current operations"); *Koch,* 2012 WL 1449186 at *4 (good cause was not shown for continued confidentiality of a ten-year-old marketing proposal). Moreover, much of NMT0001413-75 is material from public media sources.

"[M]erely asserting that a disclosure of the information 'could' harm a litigant's competitive position is insufficient; the motion must explain how." *Grimes v. Hydro Sys., LLC*, No. 1:07-CV-241, 2008 WL 711874, at *1 (N.D. Ind. Mar. 14, 2008) (citation omitted). Although Newmont cites *A Major Difference, Inc v. Wellspring Products, LLC,* 243 F.R.D. 415, 417 (D. Colo. 2006), that case dealt with trademarks and disclosure of confidential information to a direct competitor – it does not begin to explain how disclosure of stale media messaging documents, incorporating public sources, prepared in response to past events, would cause competitive harm.

8

### b. The request to protect the deposition transcript is overbroad.

Newmont's request to protect "any portion of any deposition transcript or recording that discusses the substance of" these documents, Proposed Order on Resp't's Mot. for Protective Order, Docket Entry 29-2, at 2 (July 17, 2015), should be denied because the documents do not qualify for protection. But even if the Court finds good cause to protect the documents, this request is overbroad. The transcript only references NMT000450-71 & 1512-17, which generally relate to the violent response to the November 2011 protests and the coordination between Newmont and the police. The "substance" of these documents is thus, in many respects, the "substance" of the deposition and other non-confidential materials. Any protective order should be limited to references to information contained only in the protected documents, not to mere mention of the documents or questions relating to the documents.

### II. Plaintiffs cannot be denied access to documents in the public record.

Even if the documents at issue qualify for protection, there is no dispute that Applicant must be able to introduce them in court in Peru – that is the entire point of the Application. If, despite Applicant's best efforts, those documents then become part of a public record, Applicant and his counsel cannot be restricted from using them.

Evidence in the public record cannot be restricted. *See e.g., Oklahoma Pub. Co. v. District Court of Oklahoma*, 430 U.S. 308 311(1977) (once information is "publicly revealed" or in the "public domain," courts cannot restrain its use and dissemination). A discovery protective order that purports to maintain documents under seal "even after they are introduced at trial" is invalid. *Citizens First Nat. Bank of Princeton v. Cincinnati*

*Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). Yet that is exactly what Newmont seeks.

Once they are introduced, whether the documents remain confidential will be up to the Peruvian court to decide. *See e.g., In re Kegel*, 67 F. Supp. 3d 1054, 1058 (D.N.D. 2014) ("Obviously, a federal court here cannot dictate to a foreign court what evidence it should admit."); *In re Application of Time, Inc.*, No. MISC. A. 99-2916, 1999 WL 1059744, at *4 (E.D. La. Nov. 22, 1999) (requiring litigant to request filing under seal, but leaving to the foreign court the decision of whether the documents "should be maintained under seal").[4] Deference to foreign courts is a basic principle of international comity. *See Spatola v. United States,* 925 F.2d 615, 618 (2d Cir. 1991); *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984). If the Court finds that Newmont has met its burden for designating these documents confidential, Applicant has agreed to undertake best efforts to maintain confidentiality. However, if the information becomes public "through no fault of" the Applicant – such as if the Peruvian court does not allow filing under seal or lifts confidentiality after filing – a protective order cannot restrict the Applicant and his counsel from using the public documents. *Tradewinds Airlines, Inc. v. Soros*, No. 08 CIV. 5901 JFK, 2009 WL 1321695, at *6 (S.D.N.Y. May 12, 2009).

### a. Newmont's mischaracterization of Applicant and his counsel is not a basis for a protective order.

Newmont justifies the protective order by ascribing improper motives, not borne out in the record, to Applicant and his counsel. Despite Newmont's failure to show that

---

[4] The court in *Kegel* noted that a U.S. court may request such a restriction, and could reasonably expect the foreign court to oblige, for comity purposes. *Id.*

these documents qualify for protection, Applicant offered to treat them as confidential to the extent permitted by our ethical obligations, which prohibit an agreement preventing comment on information publicly available. Herz Decl., ¶¶ 4-6. Newmont's misleading attempt to malign Applicant and his counsel does not meet its burden.

### i.   Agreeing not to comment on public documents would violate the Rules of Professional Conduct.

The proposed protective order, which would restrict Applicant and Counsels' use of the "confidential material" even if it becomes publicly available in Peru, violates counsels' professional ethical obligations. The Rules of Professional Conduct prohibit lawyers from participating in offering or making "an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between parties." Colo. Rules of Prof'l Conduc R. 5.6(b) (2012). This rule is drawn from Model Rule 5.6(b), which is widely adopted. It "applies equally to a lawyer who would propose or offer such an agreement and to a lawyer who would accept it." N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000).

This rule prohibits lawyers from entering into agreements that restrict, directly or indirectly, their ability to represent future clients in similar matters.  *See* Colo. Bar Ethics Comm. Op. No. 92; *see also* D.C. Bar Ethics Op. 335. Because agreeing to refrain from using publicly available information can prevent a lawyer from representing future clients in similar matters, the D.C. Bar Ethics Committee, interpreting a rule identical to Colorado's, held that Rule 5.6(b) prohibits lawyers from seeking or making such agreements. D.C. Bar Ethics Opinion 335 at 3 ("We believe such opponent-driven secrecy clauses are restrictions on the lawyer's right to practice in violation of Rule

5.6(b)."); *see also* N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Formal Op. 730 (2000) (holding that an agreement "that calls on the lawyer to agree to keep confidential, for the opposing party's benefit, information that the lawyer ordinarily has no duty to protect" violates the rule).

The Colorado Bar Association found that "[a] claimant's attorney should not agree to a settlement restriction giving the attorney significantly less discretion in the prosecution of a claim than an attorney independent of the agreement would have." Colo. Bar Ethics Comm. Op. No. 92 at 4-247. Because other lawyers would have unrestricted use of these documents if they become public in Peru, restricting Applicant's counsel would violate the rule. This Colorado opinion was among the sources relied upon by the ABA in an opinion on Model Rule 5.6(b), which concluded that a limitation on using information learned during the representation – except for nondisclosure of confidential information – "is a restriction upon the lawyer's right to practice." ABA Eth. Op. 00-417 at 3 (2000).[5]

If the discovery enters the public record through no fault of the Applicant, prohibiting its use by counsel would violate Rule 5.6(b). Far from demonstrating ill intent, Applicant's conduct has been consistent with ethical obligations.

### b. The mere possibility that documents may end up in the public record, through no fault of the Applicant, is not an abuse of process.

---

[5] There is no doubt that Rule 5.6(b) applies in the context of a protective order, as well as a final settlement of claims. *See, e.g., Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (finding that interpreting a protective order in order to bar future use of confidential materials obtained through independent means was contrary to the policy behind 5.6(b)); *see also State ex rel. Verizon W. Virginia, Inc. v. Matish*, 230 W. Va. 489 (2013) ("Nevertheless, agreed protective orders and confidential settlement agreements simply cannot, and will not, be construed as imposing restrictions upon an attorney's right to practice law in violation of Rule 5.6(b).").

As this Court has accepted in ordering the discovery, Applicant's purpose for this action is to obtain evidence for use in the Peruvian proceedings. That purpose has not changed. Newmont accuses the Applicant of abusing the 28 U.S.C. § 1782 process and using this "proceeding for purposes other than the Peruvian proceedings." Mot. at 11. Newmont distorts the concept of abuse of process.

Newmont offers two press releases and one interview to argue that Applicant's real purpose is not use for the Peruvian proceedings. The press releases—which focus explicitly on how the evidence will be useful in the Peruvian proceedings—only reaffirm the Applicant's proper use of the 1782 process.[6] Despite the Applicant's right to disseminate this information, the releases do not discuss or mention any of the non-confidential documents. Publicity over the initiation of actions and favorable court rulings is part of how lawyers advertise their services and abilities to prospective clients.

To be sure, one of Applicant's goals in litigating his cases in Peru is to shed light on the events of November 2011 – events of great public interest in Peru, which led to Applicant's paralysis. But obtaining evidence for legitimate use in those proceedings is

---

[6] For example, the January 2014 press release (*at* http://www.earthrights.org/media/peruvian-community-leaders-challenge-largest-usgold-mining-company-stop-human-rights) says, "ERI is seeking documents and information from Newmont to assist in pending legal proceedings in Peru"; "We hope this action will shed more light on the situation and assist in obtaining justice in Peru"; "If provided, the requested information will assist Peruvian legal authorities currently investigating the incident in both a pending criminal investigation against the two commanding police officers and a civil lawsuit brought by Mr. Campos against the police and other government actors."; ""We hope the action in the United States supports the legal efforts underway in Peru." The March 2015 press release (*at* http://www.earthrights.org/media/federal-court-orders-newmont-mining-turn-overevidence-peruvian-wounded-protest) contains similar language. "Both a criminal investigation against the two commanding police officers and a civil lawsuit against the police are currently proceeding in Peru."; "This decision requires Newmont to turn over numerous documents that we hope will shed light on the events leading to the shooting and paralysis of Mr. Campos,"; "This U.S. court decision will strengthen Mr. Campos's ability to obtain justice here in Peru, and enable our courts to fully investigate his case."

13

not an abuse of process simply due to additional motives:

> *[T]here is no action for abuse of process when the process is used for the purpose for which it is intended*, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant . . . . For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended.

Restatement (Second) of Torts § 682, Comment (b) (emphasis added). Even if Applicant would benefit from the evidence being in the public record, there is no abuse of process if it is used in the Peruvian proceedings.

Further, as Applicant has previously explained, Docket No. 20 at 8, the premise of Newmont's argument is wrong; the fact that a document can be used for more than the purpose of foreign litigation does not suggest bad faith:

> While it is, of course, possible that the discovery [Applicant] is requesting could be used for other purposes — including litigation against the respondents — that fact is irrelevant to the instant petition. Since the Court is satisfied that the documents [Applicant] is seeking are relevant to the foreign proceedings and "for use" in the foreign proceedings, the fact that [Applicant] may also be able to use the discovery in future litigation against the respondents is immaterial.

*Ahmad Hamad Algosaibi & Bros. Co. v. Std. Chtd. Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011); *accord In re Phillips*, 2004 U.S. Dist. LEXIS 16426, 2004 WL 1857580 at *2 (S.D.N.Y. Aug. 18, 2004) (holding that the possibility that disclosures may lead to claims by applicants against respondents is no basis to deny § 1782 discovery). These cases clearly assume that there is nothing improper about using such discovery for more than one purpose. And Newmont does not dispute that some courts have "reject[ed] any contention that documents may be used only for the proceedings listed in the initial application." *In re Michael Wilson & Partners, Ltd.,* No. CIV.A. 06-CV-

02575MS, 2007 WL 3268475, at *2 (D. Colo. Oct. 30, 2007) (internal citation omitted).

Newmont's cases are inapposite. In *Gillard*, the plaintiff's explicit purpose was to use the information for non-litigation purposes, and to embarrass the school. *Gillard v. Boulder Valley Sch. Dist. Re.-2*, 196 F.R.D. 382, 385 (D. Colo. 2000). Similarly, in *Norcast S.ar.l. v. Castle Harlan, Inc.*, No. 12 CIV. 4973 PAC, 2014 WL 43492, at *9 (S.D.N.Y. Jan. 6, 2014), the appellant wanted to modify an existing protective order to allow use of the information for any purpose. If that were Applicant's purpose, Applicant never would have offered to agree to a protective order that went to the bounds of the rules of ethics – keeping documents confidential so long as they did not become public record in the Peruvian court. Instead, Applicant has continuously demonstrated the legitimate purpose to use the evidence for the Peruvian proceedings. And while Newmont is correct that the Court has discretion to tailor discovery, *see Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996), the Court exercised that discretion in its Order granting, *and limiting,* the discovery requested. Discretion does not extend to preventing parties from using material that has become public in a foreign court process.

## CONCLUSION

For the foregoing reasons, Newmont's Motion should be denied in its entirety. Respectfully submitted this 7th day of August, 2015.

s/ Marissa Vahlsing
***Marissa Vahlsing***
Richard Herz
EarthRights International
1612 K Street NW, Suite 401, Washington, DC 20006
(202) 466-5188 (Tel) / (202) 466-5189 (Fax)
Email: marissa@earthrights.org
Attorneys for Applicant Elmer Eduardo Campos-Álvarez

### **Certificate of Service**

I hereby certify that on August 7, 2015, I electronically filed the foregoing Applicant's Response in Opposition to Respondent's Motion for Protective Order with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

- Alex H. Bailey
  ABailey@perkinscoie.com

- T. Markus Funk
  MFunk@perkinscoie.com

s/ Marissa Vahlsing
***Marissa Vahlsing, Esq.***
EarthRights International
1612 K Street N.W., Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
Facsimile: (202) 466-5189
Email: marissa@earthrights.org
Attorney for Applicant Elmer Eduardo Campos-Álvarez
